**Turner S. ROYAL, Plaintiff,**

v.

**MISSOURI HIGHWAY AND TRANS-PORTATION COMMISSION, formerly, State Highway Commission of Missouri, Defendant.**

**No. 79–43C(1).**

United States District Court, E. D. Missouri, E. D.

Sept. 16, 1980.

William R. Hirsch, Lawrence J. Altman, Clayton, Mo., for plaintiff.

Bruce A. Ring, Chief Counsel, Thomas H. Pearson, Asst. Counsel, John W. Koenig, Jr., Asst. Counsel, Kirkwood, Mo., for defendant.

MEMORANDUM

WANGELIN, Chief Judge.

This matter is before the Court for a decision on the merits following a five-day bench trial held June 25 through 28, 1979 and January 23, 1980. In his complaint, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and The Civil Rights Act of 1870, 42 U.S.C. § 1981, plaintiff alleges violations of those

statutes by reason of defendant's alleged failure to promote plaintiff because of his race.

After consideration of the testimony adduced at trial, the exhibits introduced in evidence, the briefs of the parties, and the applicable law, the Court makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law applicable as a finding of fact is adopted as such.

### Findings of Fact

1. Plaintiff is a black male citizen of the United States who is presently employed by defendant and who has been so employed since August 1, 1966.

2. Defendant Missouri Highway and Transportation Commission is a subordinate body of the executive branch of the government of the State of Missouri. Defendant is engaged in an industry affecting commerce and at all times herein relevant has employed fifteen (15) or more employees for each working day in more than twenty (20) calendar weeks.

3. Defendant is divided into ten (10) geographical areas designated as districts, each containing an office responsible for administration of work within that area. Plaintiff has at all times been employed in defendant's Kirkwood office, district # 6. Plaintiff was employed at the Brentwood maintenance building in 1966 as an equipment operator. Thereafter in 1967, plaintiff was promoted to the position of maintenance man and on August 1, 1968, plaintiff was promoted to maintenance crew leader. Plaintiff has remained a maintenance crew leader since that time. From August, 1966 to May, 1979, plaintiff was not refused either a service step increase or a merit step increase but in June, 1979, plaintiff was denied a merit step increase.

4. The general duties of a maintenance crew are mowing, cleaning up trash, removing snow, patching pavement, dressing shoulders, and putting down and priming pavement. The maintenance crew leader assists, directs and supervises the performance of these duties by his crew.

5. Plaintiff's performance as a maintenance man was entirely satisfactory. Plaintiff's job performance as a maintenance crew leader, while including various troublesome episodes, has earned plaintiff merit salary increases until June, 1979. Plaintiff was promoted in far less than the average time to the grade of maintenance man, and is now only at the average number of years of service for a crew leader.

6. The number of crews per maintenance building varies depending upon the area involved. But upon the evidence adduced it appears that aside from special crews there are always six (6) and sometimes as many as twelve (12) crews in District # 6. The highway maintenance foreman, while performing the task of a maintenance crew leader, assigns daily work to crews engaged in routine maintenance, reviews their progress and checks their work, directs servicing of equipment and cleaning and care of the building and grounds, keeps all the required records, prepares all the necessary reports, trains new employees, enforces safety regulations, consults with the area supervisor on the employment, promotion or release of individuals assigned to his crew, and performs all duties incidental to the above or as assigned.

7. Generally crew leaders do not "apply" for the position of highway maintenance foreman, rather, when a vacancy occurs the maintenance area supervisor for the area in which there is a vacancy is asked to review all candidates and formulate a recommendation to fill the vacancy. In 1974, all maintenance crew leaders in District # 6 were surveyed as to their interest in promotion. Plaintiff responded that he would consider a promotion to highway maintenance foreman if the job was offered, would not be willing to move from his present place of residence if required for the promotion, but would consider the St. Charles—Wentzville area, or anywhere within a fifty (50) mile radius. On June 30, 1977, plaintiff indicated he did not want to

be considered for the position of highway maintenance foreman at defendant's Brazeau building and on August 30, 1977, plaintiff indicated he did not want to be considered for the position of highway maintenance foreman at the Barnhart building. Plaintiff has never indicated to any of his superiors a willingness to move in order to obtain a promotion.

8. Since March, 1973, there have been twenty one (21) vacancies in District # 6 for highway maintenance foreman. Selection for promotion to highway maintenance foreman is made upon careful evaluation of individual credentials and demonstrated job performance. The highway maintenance foreman position is, in essence, a supervisory job requiring responsibility, leadership skills, technical skills, supervisory skills and dependability. It is in these areas that, upon the proof submitted, plaintiff has not demonstrated his qualifications. The initial review of candidates and formulation of a recommendation is made by the maintenance area supervisor, the highway maintenance foreman's immediate superior. Thereafter, the maintenance superintendents and the district maintenance and traffic engineers review the promotional recommendations and ultimately the district operation's engineer, the highest official in the district, makes the district's recommendation to the department headquarter's office. Final approval of the promotion is given by the Chief Engineer. Contrary to plaintiff's assertion, the outgoing highway maintenance foreman's recommendation of a successor does not receive "rubber stamp" approval.

9. The parties have stipulated that only twelve openings need been considered in determining whether defendant discriminatorily denied plaintiff a promotion. Defendant considered plaintiff in connection with three (3) of the twelve (12) vacancies. In the opinion of this Court, plaintiff has failed to demonstrate he was qualified for the job of highway maintenance foreman. Plaintiff has shown that he was indeed a very good maintenance man and an average maintenance crew leader but on the evidence submitted this Court cannot say that

defendant was incorrect in taking the position that plaintiff was unqualified to become a highway maintenance foreman. In those instances where plaintiff was used as a temporary highway maintenance foreman, plaintiff performed inadequately.

10. An employee's merit raises are tied to the performance appraisal system used by defendant. Testimony adduced at trial indicates that employees including plaintiff, are often given higher ratings than their actual performance would dictate in cognizance of the fact that highway salaries are low. In order to get their employees more income, the highway maintenance foreman would rate his employees higher than their performance dictated. The subjectiveness plaintiff attacks in this system has inured to his benefit.

11. Plaintiff's contention that defendant's promotional scheme falls more harshly on blacks is amply rebutted by the record. District # 6, based upon 1970 census figures, has a 15.5% black population. Plaintiff correctly points out that in 1976 and 1977 the promotion statistics in District # 6 were far below that figure but plaintiff ignores the statistics for 1975, 1978 and the first six months of 1979, where the percentage of minority promotions were 13.3%, 13.4% and 12.0% respectively. When these figures are considered in light of the very high percentage of voluntary minority terminations, it can hardly be said that minorities who stay on the job long enough to become eligible for promotion are disproportionately denied promotional opportunities.

*Conclusions of Law*

This Court has jurisdiction over the parties herein and has subject matter jurisdiction of plaintiff's Title VII claim pursuant to 42 U.S.C. § 2000e–5(f)(3) and of plaintiff's § 1981 claim pursuant to 28 U.S.C. § 1343.

■ With respect to plaintiff's "disparate treatment" claim, plaintiff has not made out a prima facie showing of disparate treatment in that plaintiff has not shown

that he was qualified for the job of highway maintenance foreman. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Furthermore, plaintiff has not shown discriminatory motive. *Teamsters v. United States,* 431 U.S. 324, 335–36, 97 S.Ct. 1843, 1854–55, 52 L.Ed.2d 396 n.15 (1977). Plaintiff has not shown "actions taken by the employer from which one could infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act'". *Furnco Const. Co. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 citing *Teamsters, supra,* 431 U.S. at 358, 97 S.Ct. at 1866.

■ Neither has plaintiff shown that defendant's promotional system falls more harshly on blacks. Figures from the relevant statistical area indicate that blacks are not excluded by the promotional system in question at a substantially higher rate than whites. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 430 n.6, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Furthermore, of the twelve (12) positions stipulated to two (2) positions or 16⅔% were filled by minorities. *Id. See also, Green v. Mo. Pac. R. Co.,* 523 F.2d 1290, 1294 (8th Cir. 1975).

Since defendant's actions were not based upon discriminatory criteria illegal under Title VII, *a fortiori,* plaintiff has not shown an intentional, deliberate and/or malicious violation of 42 U.S.C. § 1981. *See New York Transit Authority v. Beazer,* 440 U.S. 568, 583–84 n.24, 99 S.Ct. 1355, 1364–65, 59 L.Ed.2d 587 (1979). Accordingly, judgment will be entered for defendant.